FILED
2012 Feb-07  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DEMETRIUS M. SPENCER, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 7:11-CV-00041-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Demetrius M. Spencer, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").  Mr. Spencer timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Spencer was forty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at 14.)  His past work experiences include employment as a bail bondsman, security guard, kitchen

helper, animal caretaker, and garbage collector.  (Tr. at 14–15.)  Mr. Spencer claims that he became disabled on December 15, 2004, due to hypertension, diabetes, status post right knee anterior cruciate ligament repair, and degenerative joint disease of the left knee.  (Tr. at 22.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §

416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Spencer meets the nondisability requirements for a period of disability and DIB.  (Tr. at 23.) He further determined that Mr. Spencer has not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 22.)  According to the ALJ, Plaintiff's hypertension, diabetes, status post right knee anterior cruciate ligament repair, and

degenerative joint disease of the left knee are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ did not find Mr. Spencer's allegations to be totally credible, and he determined that he has the following residual functional capacity: "to perform work at least at the sedentary exertional level, which allows a sit/stand option, no pushing or pulling with the lower extremities; no climbing or driving, and no exposure to unrestricted heights." (*Id.*)

According to the ALJ, Mr. Spencer has no past relevant work, he is a "younger individual," and he has a "limited education," as those terms are defined by the regulations. (*Id.*) He determined that transferability of skills was not an issue because there was no past relevant work. (Tr. at 22.) The ALJ found that Mr. Spencer has the residual functional capacity to perform a significant range of sedentary work. (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as a packer. (Tr. at 22–23.) The ALJ concluded his findings by stating that Plaintiff "was

not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 23.)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Mr. Spencer alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes that the ALJ did not afford proper consideration to Mr. Spencer's subjective complaints of pain when he made his determination. (Doc. 8 at 6.) Second, he contends that the ALJ failed to consider the side effects of Mr. Spencer's medication. (*Id.* at 10.) Finally, he argues that the ALJ failed to consider Mr. Spencer's inability to afford medical treatment. (*Id.* at 11.)

A.    Mr. Spencer's Allegations of Pain.

Plaintiff asserts that the ALJ's evaluation of his subjective complaints of pain was improper. Specifically, Mr. Spencer alleges that the ALJ failed to state a reasonable basis for rejecting Spencer's testimony regarding his pain. (Doc. 8 at 9.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210

(quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ found that "does not have an impairment or combination of impairments that meets or equals one of the listed impairments." (Tr. at 18.) The ALJ also found that Mr. Spencer "has underlying medical conditions capable of producing some pain and other limitations." (Tr. at 20.) He concluded, however, that there was not substantial evidence to conclude "that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations." (*Id.*) Accordingly, the ALJ stated that any testimony or allegations inconsistent with the finding of residual functional capacity were not credible. (*Id.*) In making this determination, the ALJ analyzed the credibility of the Plaintiff, as well as the longitudinal record.

The ALJ found that two incidents from 2008 gave "rise to the questionability of the claimant's statements as to the severity of his symptoms and limitations." (Tr. at 20.) The first was a medical visit on January 10, 2008, where Mr. Spencer complained of pain in his leg and back after attempting to lift a heater four days before.

(Tr. at 166-69.)  The attending physician concluded the pain was due to muscle strain. (*Id.*)  The other incident was on November 28, 2008, where Mr. Spencer complained about shoulder pain after attempting to lift a boat onto a trailer.  (Tr. at 295.)  The attending physician determined that Mr. Spencer "may have aggravated some shoulder problems," but noted there were no complaints of neck pain and that Mr. Spencer still had "good range of motion" in his shoulders.  (*Id.*)

Plaintiff argues that it was legal error for the ALJ to draw conclusions about Mr. Spencer's credibility as a witness based on the two incidents in 2008.  (Doc. 8 at 9.) Plaintiff relies on *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997), in which the Eleventh Circuit held that "participation in everyday activities of short duration, such as housework or fishing," does not alone disqualify a claimant or completely undermine recommendations from physicians about an applicant's physical limitations.  *Id.* at 1441.  The principle stated in *Lewis* was derived from *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985), where the Eleventh Circuit reversed an ALJ who relied solely on an applicant's testimony that she could "read, watch television, embroider, attend church, and drive an automobile short distances" to conclude that her hypertension was not disabling.  *Id.*  In *Flynn*, however, the record

contained "uncontroverted medical testimony from two examining physicians" indicating that the applicant's hypertension was disabling. *Id.*

An ALJ is not forbidden from concluding that a person's testimony of disabling pain is discredited by documented attempts to undertake two strenuous activities. Rather, the precedent cited by Plaintiff stands for the narrower principle that a person need not be bedridden to be disabled, and that evidence of undertaking normal daily activities does not undermine a claim of inability to work, particularly where that claim is bolstered by medical evidence in the record.  Here, unlike the ALJs in *Lewis* and *Flynn*, the ALJ did not exclusively rely on Mr. Spencer's answers in the "Daily Activities Questionnaire" — such as his answering "No" to questions about any limitations on "[c]ooking and [p]reparing meals, doing "[y]ard [w]ork," and "[s]hopping" — to discredit his pain testimony.

Rather, the ALJ cited Plaintiff's two attempts at heavy lifting as his reason to doubt that Mr. Spencer suffered the level of pain that he claimed he did from his various ailments.  To the ALJ, this spoke to the credibility and consistency of Mr. Spencer's testimony, particularly his statement that he was unable to do housework or "anything outside the house," like grocery shopping.  (Tr. at 53, 129-134.) Accordingly, contrary to Plaintiff's claim, the ALJ did state a permissible and

reasonable basis for rejecting Mr. Spencer's testimony of his subjective complaints of pain, meaning that testimony need not be accepted as true as a matter of law.

Plaintiff additionally argues that the ALJ drew the wrong conclusion from the two incidents in 2008.  However, the ALJ did not rely solely on the incidents from 2008 in discrediting Mr. Spencer's testimony.  He also relied on the whole of the medical evidence presented to him, particularly the examination conducted by Dr. Pava in July 2009.

Dr. Pava concluded, after examining Mr. Spencer, that while he did complain of chronic low back pain, there was "no observed functional impairment" associated with it.  (Tr. at 389.)  More specifically, he found that Mr. Spencer brought a crutch with him to the exam, but did not use it; that his gait was normal; that he was able to walk on toe and heels and rise from a deep squatting position without difficulty; that he had full active motion of all joints, extremities and spine; and that he had no problems getting into or out of the chair or on or off of the examination table.  (Tr. at 388-89.)

While complaints of pain are noted throughout Mr. Spencer's medical records, none of those records contain objective medical evidence to support his current claims that the pain is disabling, particularly with respect to sedentary work with a sit/stand

option.  On June 5, 2007, Plaintiff complained of right knee pain after his anterior cruciate ligament repair.  (Tr. at 180.)  He did not complain of pain in the right knee again, however, and in June 2008, while complaining of pain in his left knee, he told his attending physician that he had been treated for pain in his right knee in the past.  (Tr. at 347.)   For the pain in his left knee on June 15, 2008, he underwent arthrocentesis, after which he was "much improved" and felt "comfortable going home."  (*Id.*)  Finally, when he was examined by Dr. Pava in July 2009, he made no mention of pain in his knee, only of swelling in his lower extremities.  (Tr. at 388-89.)

Plaintiff frequently saw physicians regarding left flank pain.  Again, however, his attending physicians never noted any significant physical manifestations.  On July 11, 2003, he complained of "left flank pain," but an x-ray of his spine showed that his "vertebral bodies and disc spaces are well-maintained" and that his "posterior spinal elements and sacroiliac joints are normal."  (Tr. at 364.)  On February 1, 2006, Plaintiff complained of "left flank pain," but the physician noted that there was "[n]o evidence of urinary tract stone or obstruction," nor any "acute abnormality."  (Tr. at 228.)  The physician did note "degenerative change at the right sacroiliac joint."  (*Id.*)  For the same complaint on March 2, 2006, the attending physician noted that the only accompanying physical effects were "soft tissue swelling," as well as "slight

narrowing of interphalangeal joint space," and "mild hypertrophic changes in the distal metacarpal of the thumb." (Tr. at 220.) On November 17, 2008, Plaintiff complained of pain in his lower left quadrant, but the CT scan showed "no stone, mild hyopaeration, pelvis negative, and abd otherwise negative," so he was prescribed Prilosec. (Tr. at 323.) An exam the next day showed no stone in his gallbladder, unremarkable kidneys and spleen, and an unremarkable liver except for "severe fatty infiltration." (Tr. at 329.)

With respect to his gout, Plaintiff testified that his pain reaches a 10 out of 10 on the pain scale twice a month, and that it reaches a 7 out of 10 regularly. (Tr. at 51.) Throughout his medical records, however, his complaints of symptoms related to gout have not been supported by evidence of significant degeneration, and his flare-ups have been considered manageable with medication. On November 14, 2006, Plaintiff complained of a gout flare-up, but was simply prescribed medication and released. (Tr. at 211-212.) When Plaintiff was examined by Dr. Pava on July 28, 2009, there was "no obvious joint deformity or extremity atrophy" and no evidence supporting "complaints of lower extremity edema." (Tr. at 389.) Finally, for his most recent gout flare-up on June 8, 2010, he was again prescribed medication, and his discharge

form indicated that "the disease usually responds very well to a short course" of anti-inflammatory medication.  (Tr. at 402.)

Plaintiff also testified that he suffers from headaches even when he is taking his blood pressure medication, because his blood pressure is uncontrollable.  (Tr. at 48-49.)  However, when he went to the hospital during periods of non-compliance, physicians were able to treat his hypertension and release him.  (Tr. at 169, 182-83, 207, 280-81, 296-97, 322-24, 372.)  There were no notations in these records that his medication would not control his condition.  (*Id.*)

Other complaints of pain throughout Mr. Spencer's medical history appeared to his physicians to be situational and temporary, rather than related to his ailments. In addition to the two heavy-lifting incidents in 2008, Mr. Spencer also sought medical attention for pain in his elbows after doing push-ups on August 3, 2003 (Tr. at 367.) However, the x-ray was "essentially negative" and the Plaintiff was diagnosed with bursitis in his elbow.  (*Id.*)

The ALJ provided a reasonable basis for rejecting Plaintiff's pain testimony. Furthermore, the objective medical and other evidence supports the ALJ's conclusion that Mr. Spencer's testimony regarding his level of pain was not entirely credible. The ALJ's conclusions in this regard are supported by substantial evidence.

B.      Failure to Consider the Side Effects of Mr. Spencer's Medication

Plaintiff next argues that the ALJ erred by failing to consider the side effects of Mr. Spencer's medication.  (Doc. 8 at 10.)  As with subjective pain testimony, testimony regarding side effects is to be evaluated by the ALJ in light of the whole record.  20 C.F.R. § 404.1529(c)(4).  Because the ALJ discredited Plaintiff as a witness, and because the objective medical evidence was silent with regard to side effects, there is substantial evidence for the ALJ's determination that the side effects of Plaintiff's medication were not disabling.

At Plaintiff's hearing in front of the ALJ on February 10, 2010, he testified that his medication for high blood pressure caused him drowsiness, usually immediately after taking it.  (Tr. at 47-48.)  On the "Disability Report," Plaintiff indicated that one of his medications caused drowsiness, and that he has to lie down when he takes all of his medications.  (Tr. at 121.)  Finally, he claimed  on the "Physical Activities Questionnaire" that he suffered dizziness from an unspecified medication.  (Tr. at 134.)  The medical records, however, show no complaints by Mr. Spencer about these side effects, nor any concern by his physicians about such side effects.

Additionally, Plaintiff mischaracterizes the testimony of the vocational expert with respect to whether the side effects were truly disabling.  Dr. Griffin did testify

that side effects would "preclude work activity," but only in response to the ALJ's hypothetical predicate "[i]f the medication side effects imposed moderately severe to severe limitations on his ability to concentrate." (Tr. at 67.) As such, the ALJ was not bound by the vocational expert's answer because he did not accept the Plaintiff's testimony as entirely credible. Thus, unlike Plaintiff's testimony about pain, which at least had some corroboration in the objective medical evidence (even if not enough to consider it disabling), the testimony about side effects is completely unsupported by the record.

There is an additional issue with the lack of corroboration by the objective medical evidence. In *Gantea v. Comm'r of Soc. Sec.*, 380 Fed. Appx. 950 (11th Cir. 2010), neither of two physicians who had prescribed medication to the applicant had suggested that the side effects would affect his ability to work. The Eleventh Circuit thus concluded that the ALJ was "entitled to discredit" the applicant's testimony regarding side effects on that basis alone. *Id.* at 951. Here, as in *Gantea*, the medical evidence is completely silent on any potentially debilitating side effects. Indeed, Plaintiff has referred the Court to a website entitled "Medline Plus," not to the record, for proof that the complained of side effects accompany his medications.

(Doc. 8 at 10.)  The ALJ was permitted to discredit any testimony regarding side effects.

There is substantial evidence for the ALJ's ultimate finding that the side effects of Plaintiff's medication were not disabling.  This is true even though side effects were not specifically discussed in the decision, as an ALJ is not required to address every piece of evidence presented to him.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  As discussed earlier, the ALJ discredited Plaintiff as a witness due to inconsistencies between his testimony and the objective medical evidence. Accordingly, he was not required to accept Plaintiff's testimony regarding side effects as true.  Furthermore, since the objective medical evidence was entirely silent on side effects, the ALJ had an additional basis for discrediting Plaintiff's testimony.  *See Gantea*, 380 Fed. Appx. at 951.

C.     Failure to Consider Inability to Afford Medical Treatment

Finally, Plaintiff argues that the ALJ committed error in failing to consider Mr. Spencer's inability to afford medical treatment. (Doc. 8 at 11.)  The Plaintiff did allege issues accompanying his untreated hypertension and diabetes, including dizziness and pain in his head and left side, in his testimony.  (Tr. at 47.)  Still, there is no evidence in the record confirming that Plaintiff's condition without medication is disabling.

When he was examined by Dr. Pava on July 29, 2009, his hypertension and diabetes were complicated by "severe medical noncompliance." (Tr. at 388.) Dr. Pava concluded, however, that there was "no medical contraindication to work requiring mild exertion." (*Id.*) Additionally, while Plaintiff was hospitalized various times between 2003 and 2008 for complications arising from his failure to take his medication, he was not working during virtually that entire period, and the reports simply do not indicate how long his complications lasted or how debilitating they were. (Tr. at 182-83, 244, 323, 388.)

Furthermore, while the ALJ did mention that any complications arising from hypertension or diabetes were the result of noncompliance, it appears to simply be an aside to his broader conclusion that "the medical evidence of record does not support the severity of symptoms or limitations as alleged by the claimant." (Tr. at 19.) The ALJ's conclusion that Plaintiff was capable of doing sedentary work despite complications from non-compliance is supported by substantial evidence, namely the examination records of Dr. Pava.

Additionally, Plaintiff's claim that the ALJ's credibility determination of Mr. Spencer was based in part on his non-compliance is completely unsupported by the record. While the ALJ did discuss non-compliance, he at no point in his decision

indicated in any way that he disbelieved any portion of Mr. Spencer's testimony because of it. The only explicit reference the ALJ made to Mr. Spencer's credibility was in his discussion of the incidents from 2008, which he did indicate gave "rise to the questionability of the claimant's statements." (Tr. at 20.)

Even if the ALJ did assign significance to Mr. Spencer's failure to regularly take his medication, the record contains substantial evidence to support the finding that poverty was not the basis for non-compliance. While Plaintiff did testify that his lack of health insurance prevents him from getting the medication he needs, he also testified that he could get money from family and friends to pay for it. (Tr. at 46.) Furthermore, Plaintiff never mentioned to any of his attending physicians who noted non-compliance that he could not afford his medication. (Tr. at 182-83, 244, 323, 388.) Indeed, there are more instances in Plaintiff's medical records of him reporting taking his medication than being non-compliant. (Tr. at 166-69, 261, 272, 297, 372.) Perhaps suggesting a different reason that the Plaintiff may have been non-compliant at times, the attending physician noted during a visit in January 2008 that Plaintiff was confused about the number of medications he was supposed to take. (Tr. at 167.) Regardless of the true reason for Plaintiff's non-compliance, there is substantial evidence for the ALJ's decision that it was not a result of his poverty.

The ALJ committed no legal error because he concluded that the plaintiff was not disabled despite his non-compliance, and that finding is supported by substantial evidence. Plaintiff's claims that the ALJ improperly relied on non-compliance to discredit Plaintiff's testimony are entirely unsubstantiated by the record. Finally, there is substantial evidence in the record to support the ALJ's decision that Plaintiff's non-compliance was not due to his inability to afford medication.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Spencer's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 7<u>th</u> day of <u>February 2012</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458